IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAWORSKI R.,[1]

      Plaintiff,

v.                                                                        Civil No. 3:20-cv-797 (DJN)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,

      Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff, thirty-nine years old at the time of the amended alleged onset date, has a high school education and last worked as a counselor and personal assistant. (R. at 293.) Plaintiff suffers from anxiety, depression, post-traumatic stress disorder ("PTSD"), and muscular dystrophy. (R. at 91.)

On October 30, 2019, an Administrative Law Judge ("ALJ") found Plaintiff not disabled from July 7, 2018 through October 30, 2019. (R. at 26.) After exhausting her administrative remedies, Plaintiff now seeks review of the ALJ's decision, arguing that: (1) the ALJ failed in her

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

1

residual functional capacity findings by improperly evaluating the opinion evidence of consultative examiner, Dr. Linda Scott ("Dr. Scott"); and (2) the denial decision lacked constitutional authority because it violated the President's removal powers. (Pl.'s Mem. Supp., at 1 (ECF No. 33) ("Pl.'s Mem.")).

This matter comes before the Court pursuant to 28 U.S.C. § 636(c)(1) on cross motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, and for the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 32) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 35) be DENIED, and that the final decision of the Commissioner be REVERSED and REMANDED.[4]

## I. PROCEDURAL HISTORY

On September 29, 2017, Plaintiff filed an application for disability insurance benefits, alleging disability beginning September 1, 2017 due to anxiety, depression, PTSD, and muscular dystrophy. (R. at 81, 90-91.) The Social Security Administration ("SSA") initially denied the claim on April 27, 2015, and again upon reconsideration on August 27, 2015. (R. at 80-90, 92-105.) At Plaintiff's written request, the ALJ held a hearing on May 12, 2017, where Plaintiff appeared with counsel. (R. at 120, 36-79.) On October 30, 2017, the ALJ issued a written opinion and denied

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[4] Because the Court recommends that this case should be remanded on other grounds, Plaintiff's constitutional challenge will not be addressed. *See Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156-57 (4th Cir. 2010) ("[T]he principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary.").

Plaintiff's claim. (R. at 14, 17-28.) On September 17, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*,

3

340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *See Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

**III. THE ALJ'S DECISION**

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 7, 2018, her amended alleged onset date of disability.[5] (R. at 16.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of major joint dysfunction, hypertension, migraines, depression, anxiety, and a somatoform disorder. (R. at 16.) The ALJ found Plaintiff's gastroesophageal reflux disease symptoms to be non-severe, and her right arm condition ineligible for consideration because it did not satisfy the durational requirement set forth in the regulations. (R. at 16.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.)

After step three, the ALJ assessed Plaintiff's residual functional capacity.[6] (R. at 18-19.) The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined

---

[5] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[6] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

in 20 CFR 404.1567(b) and 416.967(b), with the exception that she can only occasionally climb ladders, ropes, scaffolds, or crawl. (R. at 18.) The ALJ found Plaintiff to be limited to performing simple, routine, and repetitive tasks, "but not at a production rate pace . . . ." (R. at 19.) She is limited in her ability to make and perform simple work-related decisions, and can frequently interact with supervisors, coworkers, and the public. (R. at 19.) In addition to normal breaks, the ALJ determined that Plaintiff will be "off task from 5%-10% of the workday." (R. at 19.)

Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not perform any of her past relevant work, at least in the manner in which such work is generally performed.[7] (R. at 454.) Her conclusion was based on the testimony of a vocational expert, Plaintiff's testimony during the hearing, and the ALJ's review of the record. (R. at 24.) At step five, the ALJ took into account Plaintiff's age, education, work experience, and residual functional capacity and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 26.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ's residual functional capacity lacks substantial evidence because the ALJ improperly evaluated the opinion evidence of Dr. Scott. (Pl.'s Mem. at 1). Plaintiff also challenges the ALJ's decision as constitutionally void because it was "governed by an agency structure that violates the President's constitutional power to appoint and remove executive officers." (Pl.'s Mem. at 1). For

---

[7] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

6

the reasons set forth below, the ALJ erred in her residual functional capacity analysis. Therefore, remand is appropriate.

### A. The ALJ Erred When She Evaluated Dr. Scott's Opinion.

Plaintiff contends that the ALJ erred in her residual functional capacity analysis by finding Dr. Scott's opinion unpersuasive and not supported by the medical evidence as a whole. (Pl.'s Mem. at 9). Specifically, Plaintiff argues that the ALJ "provides a vague, boilerplate excuse regarding the medical evidence as a whole without any discussion as to what specific evidence is inconsistent with Dr. Scott's opinion or how Dr. Scott's examination does not support her findings." (Pl.'s Mem. at 10) (citing R. at 23.) Defendant responds that the ALJ properly evaluated the opinion evidence in accordance with the regulations, and that substantial evidence supports her finding that Dr. Scott's opinion was unsupported by her own examination and inconsistent with the record. (Def.'s Mot. Summ. J. & Br. Supp. ("Def.'s Mem.") (ECF No. 35) at 12-18).

For the reasons set forth below, the Court finds that the ALJ erred by failing to build an accurate and logical bridge from the evidence to her conclusion. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). This failure precludes the Court's ability to meaningfully review the ALJ's determination of Plaintiff's residual functional capacity. Therefore, remand is appropriate.

#### 1. The "Paragraph B" Criteria.

Before an agency may make an initial determination regarding a claimant's disability, in any case where evidence indicates the existence of a mental impairment, the agency must make every reasonable effort to ensure that a qualified psychiatrist or psychologist completes the medical portion of the case review and any applicable residual functional capacity assessment. 20 C.F.R. §§ 404.1503(e), 416.903(e). Additionally, the special-technique regulation affects how an ALJ evaluates and documents steps one through four of the sequential analysis if a claimant alleges a

7

mental impairment. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 646, 659 (4th Cir. 2017). Under the special-technique regulation, if the ALJ determines that a mental impairment exists, she "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [her] findings." *Id.* The ALJ must also document a specific finding as to the degree of limitation in each of the four areas of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* The ALJ must determine whether the claimant suffers from a severe mental impairment. *Id.* Then, the ALJ must determine if the severe impairment qualifies as a listed impairment. *Id.* For severe, but not listed impairments, the ALJ must assess the claimant's residual functional capacity and account for how the impairment affects the claimant's work abilities. *Id.*

The claimant bears the burden of proving that her impairments are "severe" as defined by the regulations. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(ii). Diagnoses alone are insufficient to establish severity. *See Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011). There must be a showing of related functional loss; a diagnosis, without more, does not establish that a claimant suffers from any particular symptoms or limitations. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229-30 (4th Cir. 2011).

In this case, the ALJ found that Plaintiff's medically determinable mental impairments of migraines, depression, anxiety, and somatoform disorder do not medically equal a listing under the regulations. (R. at 16-18.) In making her decision, the ALJ considered each of the four broad functional areas known as the "paragraph B" criteria, which assess the severity of mental impairments at steps two and three of the sequential evaluation process. (R. at 17.)

The first functional area is understanding, remembering, or applying information. The ALJ found that Plaintiff has a moderate limitation. She based this on her analysis of the record, which

8

showed that Plaintiff's mental status evaluations showed "average estimated intelligence, intact thought processes, and normal speech." (R. at 17.) Plaintiff exhibited "fair" attention, concentration, recent and remote memory, and insight on tasks designed to measure those qualities. (R. at 17 (citing R. at 129).) Further, Plaintiff indicated that she was able to drive, care for multiple children (with assistance), and work to a limited extent. (R. at 17.) The ALJ determined that this evidence showed that Plaintiff can understand, remember, or apply information when completing tasks.

The second functional area is interacting with others. The ALJ found that Plaintiff had a moderate limitation based on the evidence contained in the record and Plaintiff's testimony. (R. at 18.) Plaintiff exhibited friendly and cooperative behavior at a consultative examination, as well as good social judgment. (R. at 18 (citing R. at 129).) She reported being involved with her family and visiting relatives out of town. (R. at 18, 71.) She goes to church every Sunday with her neighbor in a shared van. (R. at 70.) She also maintained "social contacts and part time employment as a lead teacher." (R. at 129.) Indeed, Plaintiff reported to her psychiatrist in 2019 that she was working part-time and seemed to be able to function "a little bit better" than before. (R. at 644.) In her discharge summary from Richmond Behavioral Health Authority in July 2019, Plaintiff's providers noted that she "was actively engaged in the program," including "attend[ing] groups regularly and [] elaborat[ing] without prompting. [Plaintiff]'s interpersonal skills were appropriate with staff and peers." (R. at 659.)

The ALJ then determined that Plaintiff has a moderate limitation in the third functional area, which is concentrating, persisting, or maintaining pace. (R. at 18.) She explained that Plaintiff exhibited "average estimated intelligence, intact thought processes, and normal speech." (R. at 18 (citing R. at 129).) During her stay at Richmond Behavioral Health Authority, Plaintiff "presented with an alert demeanor, full affect, euthymic mood," although at times her thought process appeared

"preoccupied." (R. at 659.)

The fourth functional area is adapting or managing oneself. The ALJ found that Plaintiff experiences a moderate limitation in this area. (R. at 18.) She reasoned that Plaintiff indicated that she takes care of multiple children, visits relatives in other places, and is unaffected by "changes in routine. . . ." The medical record supports the ALJ's findings. For example, during her stay at Richmond Behavioral Health Authority in July 2019, Plaintiff "verbalized increased insight into her presenting problems and behaviors," and admitted that she "learned a lot of information about how to sort things out so I don't become overwhelmed . . . ." (R. at 659.) Plaintiff reported to her psychiatrist that she was tolerating her medications well, which she found to be helpful. (R. at 686.) Plaintiff testified that she cooks for herself, drives, and cleans her home. (R. at 60-61.) Plaintiff remained tearful throughout her hearing and admitted that she experiences crying spells twelve days out of thirty days a month. (R. at 68.)

Based on her evaluation of the "paragraph B" criteria, the ALJ concluded that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme limitation. (R. at 18.) While not the residual functional capacity assessment, the "paragraph B" findings are considered when determining the extent and/or severity of a claimant's limitations. The ALJ then considers the claimant's mental residual functional capacity assessment in more detail at steps four and five of the sequential analysis.

### 2. *The ALJ's Evaluation of Dr. Scott's Opinion.*

Plaintiff argues that the ALJ erred by finding Dr. Scott's opinion unpersuasive because, contrary to the ALJ's finding, Dr. Scott's opinion is supported by the record and consistent with the neuropsychological evaluation of Dr. Salmaan A. Khawaja. (Pl.'s Mem. at 8-13). Defendant

10

responds that the substantial evidence supports the evaluation of Plaintiff's residual functional capacity. (Def.'s Mem. at 12-18).

Under the regulations,[8] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1) – (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive" the medical opinion will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent" a medical opinion is with "evidence from other medical sources and nonmedical sources," the more persuasive the medical opinion will be. *Id*. § 416.920c(c)(2).

The ALJ may explain her consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id*. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id*. Under the substantial evidence standard of review, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings." *Risner v. Comm'r Soc. Sec.*, 2020 U.S. Dist. LEXIS 168482, *28, 2020 WL 6276536

---

[8] Because Plaintiff filed her disability claim after March 27, 2017, § 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

(citing *Brown v. Colvin*, No. 5:15-0321, 2016 U.S. Dist. LEXIS 111237, *6 (D.S.C. Aug. 22, 2016), *aff'd* 675 F. App'x 336 (4th Cir. 2017)).

After reviewing the evidence, the ALJ found that Dr. Scott's opinion was only partially persuasive. (R. at 23.) Plaintiff asserts that the ALJ erred because she did not provide any explanation regarding the consistency and supportability of Dr. Scott's opinion with the record. (Pl.'s Mem. at 9).

Plaintiff underwent a consultative examination with Dr. Scott in July 2018. (R. at 550-54.) Plaintiff's affect during the examination was "depressed and tearful," which worsened when recounting her childhood trauma. (R. at 551-52.) She told Dr. Scott that she is "depressed off and on and it varies." (R. at 551.) She reported having a quick temper, being prone to irritability, and having had thoughts of suicide. (R. at 551.) She told Dr. Scott that her anxiety attacks have worsened, although her anxiety in general "depends on the day and whether or not she is able to go out or to the store." (R. at 551.) Plaintiff noted that she treats with a psychiatrist, therapist, and primary care physician, and manages her symptoms with medication. (R. at 551.)

In her report, Dr. Scott opined that Plaintiff would moderately struggle to complete work tasks due to depression and related chronic pain, could not complete a normal work day without interruptions resulting from major depression, would have significant difficult relating to her co-workers and the general public, and could not tolerate the stresses of a fulltime work environment. (R. at 553.)

The ALJ found Dr. Scott's opinion only partially persuasive. (R. at 23.) She determined that it was persuasive when Dr. Scott opined that Plaintiff could "not complete complex and detailed work tasks but can perform simple and repetitive tasks . . . ." (R. at 23.) However, the ALJ was not persuaded by Dr. Scott's opinion that Plaintiff: (1) will likely struggle moderately to complete work

tasks due to depression and related chronic pain; (2) cannot "complete a normal work day without interruptions resulting from major depression;" (3) would not benefit from special supervision; (4) would experience significant interference with her ability to relate to coworkers and the public; and (5) would not be able to tolerate the stress of a full-time competitive work environment. (R. at 23.) The ALJ explained that "[t]he medical evidence as a whole does not support these opinions", and "Dr. Scott supported her opinion with findings from a single examination of the claimant." (R. at 23.)

The ALJ's general citation to Dr. Scott's opinion and blanket statement that the opinion was not supported by and consistent with the record, without more, does not allow the Court to meaningfully review the ALJ's conclusion that Dr. Scott's opinion was only partially persuasive. *See Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016) (holding that the ALJ failed to specify what objective evidence or what aspects of the treatment history he was referring to which rendered the ALJ's analysis incomplete and precluded a meaningful review). The ALJ's evaluation of Dr. Scott's opinion fails to build "an accurate and logical bridge from the evidence to her conclusion." *Id*. at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Accordingly, the ALJ erred in evaluating Dr. Scott's opinion.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 32) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 35) be DENIED and the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge David J. Novak.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: January 6, 2022